| | | |
|---|---|---|
| NIGEL KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CV-00023-NCC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Nigel King ("Plaintiff") for Disability Insurance

Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income

("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff filed a

brief in support of the Complaint (Doc. 14), Defendant has filed a brief in support of the Answer

(Doc. 17), and Plaintiff filed a reply brief (Doc. 18). The parties have consented to the

jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. §

636(c) (Doc. 7).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on March 27, 2014 (Tr. 283–90). Plaintiff

was initially denied on May 9, 2014, and she filed a Request for Hearing before an

Administrative Law Judge ("ALJ") (Tr. 211–21). After a hearing, by decision dated May 19,

2016, the ALJ found Plaintiff not disabled (Tr. 189–210). On August 31, 2017, the Appeals

Council granted Plaintiff's request for review (Tr. 278–82). On December 4, 2017, the Appeals

Council issued an unfavorable decision, finding Plaintiff not disabled (Tr. 1–7). As such, the Appeals Council's decision stands as the final decision of the Commissioner.

## II. DECISIONS OF THE ALJ AND THE APPEALS COUNCIL

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date (Tr. 194). The ALJ found Plaintiff has the following severe impairments: degenerative disc and joint disease of the lumbar spine; degenerative joint disease and arthritis of the right knee; asthma; retrocele with prolapse; history of seizure disorder with normal electroencephalogram testing; depression; and anxiety (Tr. 195–97). However, the ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 197–99).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work,[1] with the following limitations (Tr. 199). She can lift or carry 10 pounds occasionally and less than 10 pounds frequently and can push or pull only to the weight limits (*Id.*). She can sit 6 hours total in an 8-hour workday and can stand or walk 2 hours total in an 8-hour workday, each for a combined total of 8 hours in an 8-hour workday (*Id.*). Plaintiff can occasionally stoop, crouch, and climb ramps or stairs (*Id.*). She cannot climb ladders, ropes, or scaffolds, and she cannot crawl or kneel (*Id.*). She can have no concentrated exposure to pulmonary irritants such as smoke, dust, odors, fumes, gases, and poor ventilation (*Id.*). Plaintiff also can have no exposure to whole body vibration and cannot operate motor vehicles (*Id.*). She should avoid hazards of dangerous unprotected heights and dangerous unprotected machinery (*Id.*). Mentally, Plaintiff is able to understand, remember, and

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

carry out simple tasks that are routine (*Id.*). She is able to use judgment in making commensurate work-related decisions (*Id.*). She is able to occasionally interact appropriately with the general public superficially and away from crowds, and she also is able to occasionally interact appropriately with co-workers and supervisors (*Id.*). She is able to respond appropriately to changes in a routine and normal work environment (*Id.*).

The ALJ found Plaintiff unable to perform any past relevant work (Tr. 203–04). Nonetheless, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including final assembler, table worker, and document preparer (Tr. 204–05). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 205). Plaintiff appealed to the Appeals Council (Tr. 273–77).

Upon review of the ALJ's decision, and relevant to Plaintiff's appeal to this Court, the Appeals Council clarified the weight given to one medical consultant and adopted the ALJ's findings with respect to Plaintiff's severe impairments, residual functional capacity, past relevant work, and ability to perform work existing in significant numbers in the national economy (Tr. 1–7). The Appeals Council adopted the ALJ's findings in their entirety and concluded Plaintiff was not disabled (Tr. 7). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the

claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874

n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises one issue.  Plaintiff argues that the ALJ and Appeals Council erred by failing to incorporate sufficient limitations into Plaintiff's mental RFC and hypothetical questions to the vocational expert based on two moderate mental limitations found credible in a family nurse practitioner's opinion (Doc. 14 at 8–15).[2]  For the following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

---

[2]  Plaintiff alleges disability based on both mental and physical limitations (Tr. 110–135, 167). However, Plaintiff only raises arguments regarding the ALJ's RFC relating to Plaintiff's alleged mental limitations (Doc. 14 at 8–15).  Since Plaintiff does not specifically challenge the ALJ's determination regarding Plaintiff's physical limitations and focuses solely on mental limitations in the arguments, the Court's decision will be similarly limited to the arguments raised in Plaintiff's brief.  The Court will only summarize those portions of the ALJ's decision and the evidence that bear on the issues presented by this case.

**A. RFC**

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)); *see also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591. However, there is no

requirement that an RFC determination be supported by a specific medical opinion or that an RFC must be linked in each of its components to a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 931–32 (8th Cir. 2016); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). For the following reasons, the Court finds that the ALJ's RFC determination was based on substantial evidence.

Plaintiff's sole basis for remand in this case centers on an opinion by Lisa Kail, FRN-BC, a family nurse practitioner who treated Plaintiff (Doc. 14 at 8–15). Nurse Kail completed a check-the-box medical source statement in March 2016, evaluating Plaintiff's mental limitations in a list of 20 activities that assessed Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaptation (Tr. 545–46). She checked that Plaintiff was only "mildly limited," the least restrictive assessment, in 17 out of 20 specific activities (*Id.*). For example, Nurse Kail checked that Plaintiff was "mildly limited" in all activities in the understanding and memory and social interaction categories (*Id.*). Nurse Kail checked "moderately limited," the second least restrictive assessment, in only 3 activities: the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to travel in unfamiliar places or use public transportation (Tr. 546).[3] She also indicated that Plaintiff would have to miss approximately 3 days of work per month (Tr. 545).

The Commissioner appropriately discounted the weight given to Nurse Kail's opinion, and Plaintiff does not challenge this conclusion (*see* Doc. 14). As an initial matter, since Nurse Kail is considered an "other medical source" and not an "accepted medical source," which

_____

[3] Plaintiff's arguments solely relate to the first two activities (*see* Doc. 14).

Plaintiff does not contest, her opinion cannot establish the existence of a medically determinable impairment is not entitled to controlling weight. *See* SSR 06-03P, 2006 WL 2329939; *LaCroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006).[4] The Appeals Council gave partial weight to a portion of Nurse Kail's opinion for the reasons discussed in the ALJ's decision (*See* Tr. 6). In support of this conclusion, both the Appeals Council and ALJ found that the noted mild and moderate limitations were consistent with the RFC determination that Plaintiff can perform a range of simple, routine work with occasional interaction with coworkers, supervisors, and the public (Tr. 6, 203). Moreover, the ALJ found and the Appeals Council agreed that there was "no support" for Nurse Kail's opinion that Plaintiff would have to miss 3 days of work per month, citing to largely normal psychiatric findings in spite of Plaintiff's alleged mood swings and panic attacks (*Id*.). It was proper for the ALJ and Appeals Council to discount Nurse Kail's opinion to the extent it contradicted the objective medical evidence. *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007). *See also Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)) ("[W]e have recognized that a

---

[4]   Under the Regulations in effect at the time of Plaintiff's application, severe, medically determinable impairments must be based on evidence from "acceptable medical sources," such as licensed physicians, psychologists, optometrists, podiatrists, or speech-language pathologists. 20 C.F.R. §§ 404.1502, 404.1513(a), 416.902, 416.913(a) (2016). At the time of Plaintiff's hearing, the Regulations classified nurse practitioners as "other medical sources." 20 C.F.R. § 416.913(d). "Information from these other sources cannot establish the existence of a medically determinable impairment." SSR 06-03P, 2006 WL 2329939. These "other sources," therefore, are not entitled to controlling weight. *LaCroix*, 465 F.3d at 885–86.

On March 27, 2017, the definition of acceptable medical source was expanded to include nurse practitioners. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 15132 (Mar. 27, 2017). That definition, however, applies only to claims filed on or after March 27, 2017, and the parties do not dispute that because Plaintiff's claim was filed on March 27, 2014, the prior definition applies (Doc. 14 at 10 n.3). Therefore, as a nurse practitioner at the time of Plaintiff's filing, Nurse Kail is within the "other" medical source category and her opinion is not entitled to controlling weight. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007).

conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration'").

Plaintiff, however, does challenge whether the RFC appropriately accounted for Nurse Kail's moderate limitations in (1) the ability to maintain attention and concentration for extended periods; and (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (Doc. 14 at 11–13). Both limitations were categorized under "Sustained Concentration and Persistence" on Nurse Kail's form (Tr. 546). For the following reasons, the Court finds the RFC was adequate.

Despite Plaintiff's arguments to the contrary, the RFC did appropriately account for moderate limitations in concentration and attention. Plaintiff argues that because "moderate" was defined as a "30% overall reduction in performance" on Nurse Kail's checklist statement and because the *Program Operations Manual System* ("POMS") states that jobs require the ability to maintain concentration and attention for "extended" periods of time defined as approximately two-hour segments, the RFC limiting Plaintiff to simple, routine tasks did not account for Plaintiff's limited ability to maintain attention and concentration (Doc. 14 at 11). However, Plaintiff's argument is flawed. Plaintiff's argument improperly assumes the Appeals Council wholesale adopted Nurse Kail's opinion, including the *specific* definition of moderate on the checklist she completed (See Doc. 14 at 11–12). But there is no clear indication in either the Appeals Council's or underlying ALJ's decisions that they specifically equated "moderate" to a "30% overall reduction in performance," as it was so defined in Nurse Kail's form, when they used that term. First, the text of the decisions does not reference such a defined reduction (*see* Tr. 6, 202). Second, this Court would have to ignore other portions of the decisions to adopt Plaintiff's interpretation. For example, the Appeals Council concluded that the "mild to

moderate limitations [were] consistent with the [ALJ's] determination that the claimant can perform a range of unskilled, simple, routine work," and that "the medical record did not support greater limitations than those assessed" in the RFC (Tr. 203). The ALJ similarly concluded that the moderate limitations did "not preclude unskilled work" and that the RFC was supported by "the record as a whole" (Tr. 203). Therefore, to the extent Nurse Kail's opinion suggested some level of moderate limitations that were greater than the moderate limitations included in the RFC, both the Appeals Council and ALJ rejected those higher limitations. To the extent there is any ambiguity in the Appeals Council's or ALJ's decisions, which the Court does not find is the case here, the Court will resolve such ambiguity in favor of the Commissioner's determination. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) ("In conducting our limited and deferential review of the final agency determination under the substantial-evidence standard, we must view the record in the light most favorable to that determination. . . . [W]e must strive to harmonize statements where possible; we may neither pick nits nor accept an appellant's invitation to rely upon perceived inconsistencies.").

Importantly, moreover, Plaintiff's argument on concentration and attention ignores the fact that while Nurse Kail's non-medical source opinion received only partial weight, the Appeals Council and ALJ afforded great weight to the opinion of Joan Singer, Ph.D. ("Dr. Singer"). Dr. Singer, a state agency medical consultant, provided a psychological exam report and RFC assessment (Tr. 5–6). Her opinion further supports the decision to account for any moderate concentration and attention deficits by limiting Plaintiff to unskilled work and simple, routine tasks. As the ALJ noted, Dr. Singer found Plaintiff had a "moderate" limitation in concentration, persistence, or pace (Tr. 171, 202). Nonetheless, in assessing the mental RFC, Dr. Singer concluded that Plaintiff's ability to maintain attention and concentration for "extended"

periods of time was "[n]ot significantly limited" and that Plaintiff "retain[ed] the mental capacity to perform simple tasks on a sustained basis away from the public" (Tr. 173–74). The Appeals Council found Dr. Singer's RFC assessment was "well supported by the evidence" and therefore adopted her findings (Tr. 6). The ALJ similarly found Dr. Singer's opinion was internally consistent and well supported by a reasonable explanation and the available evidence, and formulated the RFC in part based on Dr. Singer's opinions along with the record as a whole (Tr. 202, 203). The Appeals Council and ALJ reasonably gave great weight to Dr. Singer's opinions because they were consistent with substantial evidence in the record, and these decisionmakers were therefore well within their authority to rely on Dr. Singer's opinion. *See* 20 C.F.R. §§ 404.1513a(b)(1); 416.913a(b)(1) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The state agency physicians' opinions were consistent with the other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating [the plaintiff's] RFC."); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (State agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments). Plaintiff does not challenge the weight given to this opinion.

Furthermore, upon review of the record, the Court agrees with the Commissioner that Nurse Kail's opinion is internally inconsistent (Doc. 17 at 10). Even though Nurse Kail checked that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, Nurse Kail also checked "no" to an overall question when asked whether Plaintiff would be "<u>off task</u> from [her mental] symptoms that would interfere with attention" needed "to perform even simple tasks" (Tr. 545) (emphasis in original). Moreover, consistent

with Dr. Singer's opinions (Tr. 173), the activities in which Nurse Kail noted Plaintiff is only "mildly limited" include the following: ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to carry out detailed instructions; and ability to work in coordination with or proximity to others without being distracted by them (Tr. 546). These objective observations in Nurse Kail's opinion are inconsistent with her conclusion that Plaintiff is moderately limited in her ability to maintain concentration and attendance for extended time periods. Even though the ALJ and Appeals Council did not specifically point out these inconsistencies, they were within their discretion in limiting Plaintiff to simple, routine tasks based on inconsistencies that appear in the record. *See Blackburn v. Colvin*, 761 F.3d 853, 860 (8th Cir. 2014) (where source renders inconsistent opinions that undermine credibility of such opinions, the opinion may be discounted or disregarded); *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (in considering the opinions of a medical source that is not an "acceptable medical source," the "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."). *Cf. Martise*, 641 F.3d at 927 (internal quotations and citations omitted) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.").

By limiting Plaintiff to simple, routine tasks, the Appeals Council and ALJ therefore appropriately incorporated moderate limitations in concentration and attention into the RFC by limiting Plaintiff to unskilled, simple, routine work. Plaintiff asserts that the simple, routine limitation accounted only for the *complexity* of work but failed to adequately account for Plaintiff's limited ability to maintain attention and concentration (Doc. 14 at 11–12). Plaintiff

seemingly argues that limiting a claimant to simple, routine work is insufficient as a matter of law to account for moderate deficits in concentration and attention (Doc. 14 at 12–13).  While Plaintiff cites to largely non-binding case law in support of this argument (*id.*), the Court is more persuaded by more recent binding case law and other cases within this district.  *See*, *e.g.*, *Westall v. Berryhill*, No. 4:16-CV-00066-CEJ, 2017 WL 1105125, at *20 (E.D. Mo. Mar. 24, 2017) (rejecting the plaintiff's argument an RFC limiting her to simple, routine work accounted only for complexity and not attention or concentration deficits, and further distinguishing *Newton*, *Leeper*, *McAllister*, and *Rapp* on this point).  *See also Chismarich*, 888 F.3d at 980 (holding "moderate" impairment in "concentration, persistence, or pace" is consistent with the RFC to "understand, remember, and carry out at least simple instructions and non-detailed tasks."); *Mangano v. Berryhill*, No. 16-CV-147-KEM, 2017 WL 4322821, at *7 (N.D. Iowa Sept. 28, 2017) (citing *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) and *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001)) ("The Eighth Circuit has recognized that the RFC assessment "need not contain much more than [that] at issue in *Newton*" to sufficiently capture a claimant's limitations in concentration, persistence, or pace. . . . For example, the Eighth Circuit has held sufficient under *Newton* an RFC assessment that limited the claimant to 'simple, repetitive, routine tasks.'"); *Henderson v. Berryhill*, No. 4:15-CV1624-JMB, 2017 WL 747611, at *7–10 (E.D. Mo. Feb. 27, 2017) (RFC limiting the plaintiff to simple, routine work, with only limited interaction with supervisors, co-workers, and the public, addressed the undisputed moderate deficiencies in concentration, persistence, or pace); *Fleming v. Colvin*, No. 4:15-CV-1150-SPM, 2016 WL 4493683, at *8 (E.D. Mo. Aug. 26, 2016) (holding in part that an RFC limiting the plaintiff to occasional interaction with supervisors, co-workers, and the public appropriately limits exposure to potential distractions and is sufficient to account for limitations in

concentration, persistence, or pace); *Boyd v. Colvin*, No. 4:15-CV-823 NAB, 2016 WL 3257779, at *5 (E.D. Mo. June 14, 2016) (noting ALJ granted only some weight to given nurse's opinion that the plaintiff had moderate limitations in sustained concentration and persistence and holding RFC limitation to simple, routine, unskilled work adequately compensated for moderate limitations in concentration, persistence or pace); *Gray v. Colvin*, No. 4:14-CV-00815-JAR, 2015 WL 5692325, at *11 (E.D. Mo. Sept. 28, 2015) (distinguishing *Newton* and holding RFC limiting the plaintiff to unskilled work appropriately accounted for limitations in concentration, persistence, and pace based on ALJ's review of medical records, evaluation of subjective complaints, and great weight given to state agency consultant and little weight given to treater's opinions); *Faint v. Colvin*, 26 F. Supp. 3d 896, 911–12 (E.D. Mo. 2014) (distinguishing *Newton* and holding ALJ's RFC limiting the plaintiff to simple, unskilled work appropriately accounted for moderate limitations in the plaintiff's ability to maintain attention and concentration for extended periods and other limitations in concentration, persistence, or pace). Therefore, contrary to Plaintiff's contention, moderate limitations on concentration and attention were in fact appropriately accounted for in the RFC. *See Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (rejecting argument that ALJ must include specific limitations in RFC related to opinion the ALJ partially credited when other included limitations sufficiently encompass the opinion).[5]

---

[5] Moreover, as a practical and factual matter, the Court takes judicial notice of the fact the representative jobs the VE identifies (final assembler, table worker, and document preparer) require a specific vocational preparation ("SVP") level of two according to the *Dictionary of Occupational Titles*. An SVP-2 level job requires "little training" and "corresponds to unskilled work, which 'need[s] little or no judgment to do' and includes 'simple duties that can be learned on the job in a short period of time.'" *Henderson*, 2017 WL 747611, at *10 (quoting *Hulsey v. Astrue*, 622 F.3d 917, 922–23 (8th Cir. 2010)) (holding unskilled, SVP-2 jobs support and are consistent with an RFC limiting a plaintiff with moderate difficulty in concentration, persistence, or pace to simple routine work).

Plaintiff's argument regarding the Appeals Council's alleged failure to adequately consider Nurse Kail's opinion that Plaintiff was moderately limited on the second point—her ability to work within a schedule, maintain regular attendance, and be punctual with customary tolerances—is similarly without merit. First, the Appeals Council rejected Nurse Kail's opinions regarding absenteeism. While Nurse Kail opined that Plaintiff would be required to miss 3 days of work per month because of her limitations (Tr. 545), the Court agrees with the Appeals Council and the ALJ that such a finding is not supported by the rest of the record (Tr. 6, 203). *Raney*, 396 F.3d at 1010 (explaining that in considering the opinions of a medical source that is not an "acceptable medical source," the "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."). For example, as the Appeals Council noted in support of its finding on this point and as the Court further discusses below, treatment notes documented largely normal psychiatric findings (Tr. 6; *see also*, *e.g.*, 440, 486, 488, 584, 605, 651, 660, 670). Plaintiff also regularly cares for her grandchildren (Tr. 114, 200). Even Nurse Kail found that Plaintiff was only mildly limited in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; and to sustain an ordinary routine (Tr. 546). To the extent there is any evidence in the record suggesting that Plaintiff cannot maintain regular attendance or punctuality, it is the job of the ALJ to resolve that conflict. *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007). The ALJ has done so in this case, and that decision is within the zone of reasonableness. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (noting that a reviewing court will not disturb the ALJ's decision unless it falls outside the zone of reasonableness).

Second, Plaintiff's argument regarding schedules, attendance, and punctuality, again ignores that the Appeals Council and ALJ gave only partial weight to Nurse Kail's opinion but great weight to Dr. Singer's opinion. Dr. Singer concluded Plaintiff was not significantly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (Tr. 173). Therefore, while the Appeals Council acknowledged the moderate limitation in schedules, attendance, and punctuality, a fair reading of the decision indicates that by rejecting Nurse Kail's opinion regarding absenteeism, the Appeals Council did not find that limitation fully credible, particularly in light of Dr. Singer's opinion.[6] *See Jeffries v. Berryhill*, No. 4:16 CV 18 JMB, 2017 WL 365439, at *6 (E.D. Mo. Jan. 25, 2017) (equating absenteeism with the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances). The Appeals Council and ALJ were not required to incorporate limitations they did not deem credible, particularly when giving only partial weight to an opinion. *See, e.g.*, *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (ALJ appropriately restricted RFC "based on his credible limitations of record"). The Court therefore is not persuaded by Plaintiff's reliance on non-binding cases, including *Trotter* and those where the at-issue opinion was afforded more weight than here.

Furthermore, the evaluation of Plaintiff's subjective complaints also impacted the RFC and support the limitations included therein. *See Wildman*, 596 F.3d at 969 ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953,

_____

[6] Plaintiff also associates absenteeism with the limitations on schedule, attendance, and punctuality, arguing the ALJ did not discuss Plaintiff's "ability to perform activities within a schedule with the vocational expert" in contrast to Plaintiff's attorney, who did ask about "absenteeism." (*See* Doc. 14 at 14). It is inconsistent to also argue that the Appeals Council's decision to give no weight to Nurse Kail's opinion on absenteeism did not factor into the final RFC given the only partial weight afforded her opinion.

957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). First, for example, the ALJ noted that the objective medical evidence demonstrated repeated normal findings, including good attention span and concentration ability, and an absence of recent complaints of memory, attention, or concentration problems (Tr. 196, 198, 406, 435). The Appeals Council also relied upon treatment notes documenting largely normal psychiatric findings (Tr. 6, 440, 486, 488, 584, 605, 651, 660, 670). Upon review of the record, Plaintiff's medical providers, including Nurse Kail, regularly observed Plaintiff was alert, oriented, capable of logical thought processes, and in no distress, had an intact memory, presented with a good attention span and concentration, and denied being depressed or anxious (*see, e.g.*, Tr. 422, 435, 440, 448, 451, 457, 462, 498, 504, 584, 617–19). *Goff v. Barnhart*, 421 F.3d at 792–93 (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints). Second, the ALJ pointed to some evidence suggesting that Plaintiff had improved or stabilized on her treatment regimen (Tr. 196, 400–13). *See, e.g.*, *Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (evidence of relief from medication supports ALJ's findings that complaints were not fully credible); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) (impairments that are amenable to treatment "do not support a finding of disability.") Third, the ALJ noted daily activities that were inconsistent with total disability. For example, in evaluating the severity of Plaintiff's mental impairments, the ALJ noted that in addition to regularly caring for her grandchildren several days of the week, she could prepare simple meals, do laundry, mow, shop, and pay bills, and reported she could function independently (Tr. 114, 198, 348–49, 440, 459, 657). Plaintiff also reported driving, which the ALJ reasonably found required continued attention and sustained ability with memory, attention, and concentration to adaptively focus (Tr. 202, 349). *See, e.g.*, *Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he

inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility"). Fourth, the ALJ noted Plaintiff reported being more stressed due to family and financial issues (Tr. 196). For example, Plaintiff reported relationship problems with her controlling boyfriend including that he would not help with finances as well as repeated conflict with and between family members (Tr. 405, 410, 438, 440, 442). *See*, *e.g.*, *Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (situational depression not disabling); *Williams v. Colvin*, No. 2:15-CV-29-RLW, 2016 WL 3971377, at *7 (E.D. Mo. July 25, 2016) (impairments exacerbated by situational stressors such as "family conflicts" not disabling); *Budo v. Astrue*, No. 4:12-CV-187-JAR-TIA, 2013 WL 1183364, at *23 (E.D. Mo. Mar. 5, 2013) (situational depression due to "family situations" not disabling); *Rayford v. Astrue*, No. 4:09-CV-1842-MLM, 2011 WL 720068, at *19 (E.D. Mo. Feb. 22, 2011) (finding plaintiff's psychiatric conditions were mainly environmental because they were based on family problems and holding such situational conditions cannot be considered disabling). Therefore, substantial evidence supports the ALJ's decision, adopted by the Appeals Council, that the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence (Tr. 7, 201). These findings, in turn, impacted the RFC. *See Julin*, 826 F.3d at 1086 (an ALJ's decision to discount the plaintiff's credibility is interrelated to and influences the RFC).

Finally, to the extent the Plaintiff identifies records that support Plaintiff's allegations, including additional opinions that the ALJ discredited and gave little weight but that Plaintiff does not challenge (*e.g.*, Doc. 14 at 14–15),[7] "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even

---

[7] For example, Plaintiff contends that a 2014 evaluation and resulting GAF score support the limitations in Nurse Kail's opinion (Doc. 14 at 15). However, the ALJ assigned those scores limited weight (Tr. 203), and Plaintiff does not challenge this (Doc. 14 at 14–15).

if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

For these reasons, the Court finds that the RFC was based on substantial evidence. *See Winn*, 894 F.3d at 987 (quoting *Cox*, 495 F.3d at 619–20) ("The ALJ was not required to accept any physician's opinion regarding this element of Winn's RFC. 'Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'").

## B. VE Testimony

Finally, to the extent Plaintiff argues that the ALJ failed to adequately account for Plaintiff's moderate limitation in concentration, attention, absenteeism and off-task behavior in the hypothetical questions posed to the VE based on Nurse Kail's opinion (Doc. 14 at 14), the Court finds that the ALJ adequately captured the consequences of Plaintiff's credible moderate limitations. *See Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a vocational expert's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); *Howard*, 255 F.3d at 582 (quoting *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) ("'[W]hile the hypothetical question must set forth all the claimant's impairments, [citation omitted], it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.'").

As addressed in more detail above, the ALJ's limitation of Plaintiff to simple tasks that are routine, which was included in the question to the VE, adequately accounted for and captured Plaintiff's moderate limitations in concentration and attention. *See Howard*, 255 F.3d at 582 (ALJ's hypothetical concerning someone who is capable of doing simple, routine tasks

adequately captures claimant's deficiencies in concentration, persistence, or pace); *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (hypothetical that included the ability to do only simple routine tasks that do not require close attention to detail or work at more than regular pace is enough to distinguish case from *Newton*); *Henderson*, 2017 WL 747611, at *9 (noting continued vitality of *Howard* and *Brachtel*); *Boyd*, 2016 WL 3257779, at *5 (citing *Howard* and *Brachtel*) ("The Eighth Circuit has found that hypotheticals regarding concentration, persistence, or pace that included the limitations of 'simple routine, repetitive work' and 'simple, repetitive, routine tasks' adequately captured claimants' deficiencies in concentration, persistence, or pace.").

Moreover, the Appeals Council and ALJ reasonably gave no weight to Nurse Kail's opinions regarding absenteeism, which relate to the ability to perform activities within a schedule. *See Martise*, 641 F.3d at 927 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting *Lacroix*, 465 F.3d at 889); *Wildman*, 596 F.3d at 969 ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded."); *Guilliams v. Barnhart*, 393 F.3d 789, 804 (8th Cir. 2005) (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); *Gilbert v. Apfel*, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record.").

Because there was work which Plaintiff could perform, based on the testimony of the VE and her independent review of the DOT, the ALJ found Plaintiff was not disabled. *Martise*, 641 F.3d at 927 ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the

Commissioner's denial of benefits.'") (quoting *Lacroix*, 465 F.3d at 889). As such, the Court finds the ALJ posed a proper hypothetical to the VE, the ALJ properly relied on the VE's testimony that there was work existing in significant numbers which Plaintiff could perform, and the ALJ and Appeals Council's finding that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 14th day of March, 2019.

  /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE